[Crim. No. 12864.   Second Dist., Div. One.   July 17, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DONNELL LIVINGSTON, Defendant and Appellant.

Raymond H. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip M. Rosten, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of kidnaping (§ 207, Pen. Code) and rape (§ 261, subd. 3, Pen. Code) ; the court struck the allegation from both counts that he had been armed with a deadly weapon, a knife. Defendant's motion for a new trial was denied. He appeals from the judgment. The purported appeal from order denying the motion is dismissed.

We view the evidence in a light most favorable to the judgment. (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].) Around 2 a.m. on July 28, 1965, Mrs. Robinson was in a telephone booth at 59th and Normandie using the telephone when she heard someone behind her. She turned around and saw defendant and another boy with a knife in his hand coming toward the booth. Becoming frightened, she dropped the phone and tried to close the door but defendant and the other boy, whose face was heavily scarred or pockmarked, pushed open the door; they grabbed her and told her she had better not scream or fight because they would kill her. She struggled but fell, and they dragged her across the parking lot by her hair and arms to the back of a market where she was forced into the back seat of a parked vehicle, a 1954 Mercury, in which a third man sat at the wheel. The car was driven to 64th Street where they ordered her to remove her slacks and in turn each of the three held the knife against her side and forced her to have sexual intercourse. Then they forced her to dress and drove her to 70th and Haas where she

was pushed out of the car. She went to a near-by house, where the occupant called the police. The officers retrieved her purse from the phone booth and her sweater from behind the market, then took her to a hospital where a doctor examined her and took smears. Tests indicated the presence of male sperm. At the trial Mrs. Robinson said defendant was wearing a dark striped shirt and the boy with the knife, an olive green sweater; at the juvenile hearing she had said that defendant was wearing the olive green sweater and the boy with him, a black striped shirt, and that the latter had no identification marks. While in the car, she heard one of the boys say he had to get back to work in Pasadena.

. Three days after the attack, Mrs. Robinson was driving in the car with her husband when she saw defendant; he was sitting in a restaurant on the corner of 59th and Normandie. Her husband stopped the car, picked up a tire iron and entered the restaurant saying he was going to kill the boy if "it was him." Inside he asked defendant if he was one of the boys who had attacked his wife the other night; defendant said no, he wasn't even in town then. He then asked his wife if she was sure defendant was the boy; afraid that he might kill defendant, she told him she wasn't sure and wanted to get the police to have him questioned. They then called the police who for some reason could not come out, thus, they left the restaurant and flagged down a patrol car in which were Officers Knop and Canterbury. Mrs. Robinson described the circumstances, led the officers to the restaurant and pointed out defendant. She was "very positive" in her identification of defendant as one of the boys who raped her, and defendant was arrested. Officer Canterbury advised defendant of his constitutional rights, then confronted him with the charge which he denied. Later, at the station, he said he did not know anyone who owned a 1954 Mercury. Officer Knop asked defendant about July 28; defendant said he was out of town the morning of the 28th with his father. Later Officer Harris also advised him of his constitutional rights and asked defendant what he was doing on the night of July 27 explaining that the attack had occurred early in the morning of the 28th; he asked defendant if he understood the day they were discussing; defendant said he did and that he had been working in Ventura with his father doing some body work. He said he arrived at home with his father about 10 p.m. where his girl was waiting, remained in the house briefly, walked her home and returned to his own. On January 5, 1966, Officer

Harris obtained some photographs of persons closely resembling defendant and took them, with one of defendant, to Mrs. Robinson; he asked her to "pick out the guys who assaulted you"; she identified defendant's photograph without hesitation.

Defendant, his mother and sister presented an alibi defense. On July 27 he was home about 6 or 6:30 p.m.; after eating went to his girl friend's where he stayed until 9:30; he returned home at a quarter to ten and watched television with his mother and father; at 11:30 he went to sleep and awakened when his sister came home and gave him some ice cream and cake she had brought from a birthday party; he went back to bed about a quarter after two and did not leave the house until his mother awakened him the next morning to go to work. He denied assaulting Mrs. Robinson, that he had a dark striped shirt, an olive green sweater or a knife, knew anyone who owned a 1954 Mercury or worked in Pasadena or knew anyone who worked there; he knew a Dave Tyson who people sometimes thought was his brother, and sometimes at school he had been mistaken for David. On the night of his arrest defendant was sitting in a barbecue playing cards with friends when Mrs. Robinson and a man entered; she told the man, "That is the one"; he said, "I'm the one what?" and the man with her told him that he had attacked his wife the other night; defendant said he had been out of town working with his father in Van Nuys all week, that he wasn't even in town; the man was carrying a tire iron behind one leg and began to raise his voice, so the man who ran the barbecue told him that they would have to leave because he didn't want any trouble, whereupon they left; he continued to play cards and twenty or thirty minutes later they returned with the police and he was arrested.

In a 110-page brief, 88 pages of which consist of a detailed account of the evidence found in 340 pages of transcript, appellant contends that his arrest was illegal in that the officers had no warrant and did not have probable cause to arrest him. He says he committed no felony in the presence of the police and although a felony had been committed, there was no reason to believe that he had committed it; and argues, without any reference to the transcript, that Mrs. Robinson "in the presence of the arresting officers" stated "she was not sure" that he was one of the men, and her excuse for this "doubtful and uncertain statement of identity"—fear that

her husband would kill him—was without merit because two armed officers were "right there."

■ Appellant's contention is without substance if only because he failed to make objection to, or raise any issue of, the validity of his arrest in the lower court. The point is here improperly raised for the first time on this appeal. (*People* v. *Northrup*, 203 Cal.App.2d 470, 474 [21 Cal.Rptr. 448]; *People* v. *Carter*, 192 Cal.App.2d 648, 661 [13 Cal.Rptr. 541].)

■ The argument made by appellant is predicated on no evidence we have been able to find in the record. Considering the length of appellant's brief and his meticulous summary of the evidence therein, there is no excuse for misquoting the evidence. It is undisputed that when her husband confronted defendant in the restaurant with a tire iron, Mrs. Robinson told him that she was not sure, for the reason that he had said to her "he was going to kill the boy if it was him"; and that this was *before* the officers were called. According to her testimony, ". . . when we went inside I told him I wasn't sure that it was the boy because I was afraid that he would kill him. Then . . . we went back outside and I told him I wanted to get the police to have the boy questioned, and so I went—I called the police . . . then . . . we found a patrol car"; then she took the officers into the restaurant where defendant was arrested. The statement Mrs. Robinson made to her husband "that she was not sure" occurred when no police officers were present. The officers definitely were not in the restaurant at the time, did not hear her statement, and in fact had not yet been called by the Robinsons. This renders appellant's argument worthless on two counts—first, Mrs. Robinson's admitted reason for telling her husband "that she was not sure"—her fear that he would kill defendant—was indeed a valid one because two armed police officers were not "right there" in the restaurant, as represented by appellant in his brief, to stop her husband's intended attack; and second, neither police officer, at the time defendant was arrested, knew of Mrs. Robinson's prior statement, and he was arrested solely upon her "very positive" identification of him as one of the boys who had raped her.

■ The facts and circumstances facing a police officer at the time he is required to act constitute the important factor in a determination whether the officer's belief was based upon reasonable cause. Officers Knop and Canterbury, riding in their patrol car, were flagged down around 1 a.m. by a rape victim who told them of the attack on her three nights before,

her identification of defendant as one of those who had committed the crime and her confrontation of him in the restaurant; she led them to the restaurant, pointed to defendant and, according to Officer Knop, was "very positive" in her identification of him. "Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.]" (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Stewart,* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97] ; *People* v. *Cockrell,* 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116] ; *People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208].) It is reasonable for police officers to act upon identification by an observer of the commission of an offense (*People* v. *Lewis,* 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579]), or by the victim. (*Cole* v. *Johnson,* 197 Cal.App.2d 788, 793 [17 Cal.Rptr. 664].) Inasmuch as Mrs. Robinson was the victim of the attack, we do not know how she could be characterized by appellant as an unreliable "stool pigeon." Even one who observes a criminal activity and who reports a crime committed in his presence and identifies the perpetrator is more than a mere informer. (*People* v. *Lewis,* 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579].)

Among the many unsupported statements made by appellant is one that "the People's case is built wholly upon circumstantial evidence." The record shows that the proof of the crime came directly from the mouth of the victim, Mrs. Robinson. ▮ As to a warrant, after the victim positively identified defendant, there was no good reason for delay. Further, after Mrs. Robinson had told the officers defendant was the boy and was "very positive" in her identification, and considering the group defendant was in, the early hour in the morning and the fact that he was in a restaurant, it was reasonable for the officers to conclude that in all probability he would not remain there for long. (*People* v. *Sandoval,* 65 Cal.2d 303, 310-311 [54 Cal.Rptr. 123, 419 P.2d 187] ; *People* v. *Smith,* 63 Cal.2d 779, 797 [48 Cal.Rptr. 382, 409 P.2d 222].) In any event, the relevant test here is not whether it was reasonable to produce a warrant but whether the arrest was valid without one; the arrest was valid. (Pen. Code, § 836, subd. 3.)

▮ An extensive factual argument which has no place in this court is submitted by appellant to support his last

contention that the evidence is insufficient to sustain the judgment of conviction. At various places in his brief he has conceded that a rape and kidnaping in fact took place, thus there is no question concerning the corpus delicti of either crime. Appellant insists that proof of his identity was not established. Indeed it was established to the satisfaction of the jury, and the strength or weakness of identification evidence is a matter for the trier of fact. (*People* v. *Jones,* 221 Cal.App. 2d 408, 409 [34 Cal.Rptr. 535].) The victim's testimony (wherein she identified the defendant) alone is sufficient to sustain a conviction for both kidnaping (*People* v. *Whitson,* 25 Cal.2d 593, 604 [154 P.2d 867]; *People* v. *Sandoval,* 224 Cal.App.2d 573, 575-577 [36 Cal.Rptr. 793]; *People* v. *Reese,* 220 Cal.App.2d 143, 145 [33 Cal.Rptr. 561]), and rape (*People* v. *Golden,* 55 Cal.2d 358, 363 [11 Cal.Rptr. 80, 359 P.2d 448]; *People* v. *Burroughs,* 200 Cal.App.2d 629, 633 [19 Cal. Rptr. 344]; *People* v. *Guy,* 191 Cal.App.2d 714, 721 [13 Cal. Rptr. 17]), unless it is inherently improbable or false on its face; here it is neither. The record demonstrates without question the positive identification by Mrs. Robinson of defendant as one of those who abducted and raped her. She did testify at the juvenile hearing that defendant wore an olive green sweater, and the other boy, who had no identification marks, wore a black striped shirt; and on cross-examination at the trial that defendant wore a dark striped shirt and the boy with the knife, who was pock-marked, wore an olive green sweater. But there is no question concerning her positive identification of the defendant as one of those who assaulted her. She " very positively" identified him to Officer Knop in the restaurant before defendant was arrested; a short time thereafter, without hesitation, she identified defendant's photograph from among other photographs of persons who closely resembled him; she identified defendant at the juvenile hearing and again positively identified him at the trial. The jurors, who had the duty to determine the credibility of witnesses, weigh the evidence and resolve all factual conflicts, accepted the testimony of Mrs. Robinson as credible and rejected the alibi testimony as false. We will not interfere with the jury's determination.

■ The Attorney General, not appellant, has raised the only legitimate issue on the record before us. Defendant was committed to the Youth Authority for the term prescribed by law on each count. According to the Commitment "counts 1 (kidnaping) and 2 (rape) are ordered to run CONCURRENTLY

with each other." There is no doubt that both of the offenses were incident to but one objective—sexual intercourse with Mrs. Robinson; thus, defendant can be punished for only one. (§ 654, Pen. Code; *People* v. *Bynes,* 223 Cal.App.2d 268, 272-273 [35 Cal.Rptr. 633]; *People* v. *Ridley,* 63 Cal.2d 671, 677 [47 Cal.Rptr. 796, 408 P.2d 124]; *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) Inasmuch as rape is the crime subject to the greater punishment (§§ 208, 264, Pen. Code), the judgment, insofar as it imposes punishment for kidnaping, should be reversed. (*People* v. *Bynes,* 223 Cal.App.2d 268, 273 [35 Cal.Rptr. 633].)

The judgment is reversed insofar as it imposes a sentence for kidnaping; in all other respects the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.