*652
 
 LILLIE,
 
 J.
 

 A jury convicted Williams and Jenkins of two counts of first degree robbery and found each to have been armed with a deadly weapon at the time of the commission of the offenses. Later other counts were dismissed in the interest of justice. Defendants appeal from the judgments.
 

 Count I
 

 On September 9, 1965, around 9:30 p.m., Williams pointed a gun at Mr. Carlson, manager of Alpha Beta Food Market, and ordered him to the front of the store where he forced him to open the safe and put $900 in an ice cream bag; Williams then forced Carlson to a checkstand where Violet Ballentine was working; Carlson opened the cash register and put $300 into the bag which Williams took and left the store. In the courtroom Carlson positively identified Williams as the man holding the gun and taking the money, and Jenkins as a man standing in line at the checkstand.
 

 Mrs. Ballentine saw Carlson and Williams walk toward the safe where Carlson opened it and put the money in a blue ice cream bag; Carlson with Williams behind him walked to her checkstand where Williams asked for the money-order drawer; Carlson opened her register and gave the money to Williams. She positively identified Williams by picking him out of a lineup at the police station; she saw Jenkins standing in front of her checkstand but did not point him out at the lineup because she was not positive of her identification, however, at the trial she positively identified Jenkins as the man standing at her checkout stand.
 

 Mr. Mangiameli, a customer, saw Williams, holding a gun in Carlson’s back, walk Carlson by him; he went to the rear to telephone but Jenkins, holding a gun which he cocked, walked up and said, “That will be enough of that”; Jenkins ordered him and the butcher to the checkstand, got him in line, shoved the gun in his ribs and said, “I mean business; I have nothing to lose. I have got lung cancer and only six months to live”; Jenkins jabbed him in the ribs with the gun several times more; while standing there he saw Carlson and Williams clean out the money order register. Mangiameli identified both defendants in a police lineup; in the courtroom he positively identified Williams and Jenkins.
 

 Mr. Parrish, a meat cutter, saw Jenkins come into the market, walk past the meat counter, go to the front of the store and return to the meat counter; Mangiameli came up and asked if he had a telephone; Jenkins walked up with a
 
 *653
 
 pistol and told them to stand there; Jenkins had a gun on the counter with his hand partially concealing it and slid back the barrel saying it was leaded and that he meant business; Jenkins told him to walk to the front and stand in line; he saw Williams next to Carlson at the cash register; he heard Jenkins state that he had lung cancer and didn’t care what happened. Parrish identified Jenkins at a police lineup. At the trial he positively identified Williams as the man he saw in the checkstand, and Jenkins as the man who took him from the meat counter to the checkstand.
 

 Count II
 

 In the morning of September 24, 1965, Williams and Jenkins and a third person—all armed with pistols—returned to the same market and approached Mr. Wilson, a clerk, just outside the door; Wilson was ordered inside and to keep his mouth shut; in the store Jenkins said to Williams, “Get the butcher and the produce man, gather up everyone and bring them up”; Jenkins was standing 5 feet away with a gun pointed at Wilson whom he told to open the safe; Williams said, “This time I want the middle safe opened”; of the three safes, most of the money was kept in the middle one; Mr. Chapin, who was brought in by Williams, said, “No, it is on time lock and it isn’t off yet”; Williams replied, “I happen to know that it comes off of time lock at least by five minutes after 8:00”; Jenkins cocked his gun and Chapin opened the safe; Chapin put the money in an accordion-shaped bag Jenkins produced; they were all ordered back into the lobby area and the three men left the store. Wilson tried to go after them; he saw three men get into a car but one of them pointed a gun at him and fired. In the courtroom he identified Jenkins and Williams as two of the three men, and two guns which looked similar to those held by them.
 

 Williams approached Chapin from the rear and at gun point forced him to the center of the store where other employees and Jenkins were; Chapin saw a gun in Jenkins’ hand and took the keys to the safes from Wilson; he opened the top safe and cleaned it out but Williams told him to open the center one; Chapin said it was on time lock but Williams told him he knew that the safe would open; Jenkins put a gun in Chapin’s right ear; Chapin heard the clicking of the chamber so he opened the safe and put approximately $3,600 in a satchel. Jenkins took off his sun glasses, looked into the top safe and then in the center one and stood up. Chapin
 
 *654
 
 positively identified Williams and Jenkins in a police lineup; in the courtroom he again positively identified both of them.
 

 Marilyn Long, a meat wrapper, was ordered by a man with a gun to the front of the store where others were around the checkstand; she saw Jenkins near the safe holding a gun; Williams stood next to her with a gun in his hand. At a police lineup she positively identified Jenkins and also identified Williams, but was not positive as to him; however, in the courtroom she positively identified both Williams and Jenkins.
 

 Mr. Graham, who worked in the produce department, noticed three men enter the front door accompanied by Wilson; at a police lineup he positively identified Jenkins; in the courtroom he identified Jenkins and a man who looked similar to Williams; the man who looked like Williams took him with others to the front of the safe at the point of a gun; Jenkins also had a gun.
 

 Officer Beyrouty, with other officers, arrested Williams at 2:40 a.m. on September 29, 1965; they were operating on the identification of Williams by Wilson, a victim of the second robbery, from a mug shot of Williams submitted with others to him by the police; they knocked on the door and when Williams, who matched the description and face on the mug shot, responded they arrested him and searched his apartment finding a gun and holster (Exh. 1) and $1,538 in various denominations and coins.
 

 Officer Beyrouty went to Jenkins’ home with a search warrant; there the officers found a gun, a clip with seven rounds of ammunition in it and $228 in change.
 

 Jenkins’ testimony amounted to a denial that he was involved in the robberies but he said he could not recall where he was at the time they were committed; he testified that he was not employed during September but was drawing $55 from the unemployment office; he had never seen Carlson prior to the preliminary hearing nor any of the other witnesses before seeing them in court. Williams did not testify.
 

 On the theory that there was no probable cause for Williams’ arrest because it was predicated solely upon Wilson’s identification of him from mug shots four hours before the arrest, Wilson was an informer not previously known to the police or proved reliable and the only other information the officers had was obtained from an undisclosed informer who was not “described in any respect,” appellants claim that
 
 *655
 
 the gun and holster (Exh. 1) found in Williams’ apartment after his arrest were products of an illegal search and seizure and inadmissible in evidence.
 

 In the absence of a warrant, a peace officer may arrest a person whenever he has reasonable cause to believe that the person arrested has committed a felony. (§ 836, subd. 3, Pen. Code;
 
 People
 
 v.
 
 Torres,
 
 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823] ;
 
 People
 
 v.
 
 Fischer,
 
 49 Cal.2d 442, 446 [317 P.2d 967];
 
 People
 
 v.
 
 Ingle,
 
 53 Cal.2d 407, 412 [348 P.2d 577].) “To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty.”
 
 (People
 
 v.
 
 Hillery,
 
 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208];
 
 People
 
 v.
 
 Stewart,
 
 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97] ;
 
 People
 
 v.
 
 Cockrell,
 
 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116].) Inasmuch as there is no formula for the determination of reasonableness and each case must be decided on its own facte
 
 (Go-Bart Importing Co.
 
 v.
 
 United States,
 
 282 U.S. 344, 357 [75 L.Ed. 374, 382, 51 S.Ct. 153];
 
 Ker
 
 v.
 
 California,
 
 374 U.S. 23, 33 [10 L.Ed.2d 726, 737, 83 S.Ct. 1623]), we review the information in the officers’ possession at the time they arrested Williams.
 

 While the testimony of Officer Beyrouty does not reflect its nature, it does establish that certain information given to police by an informer caused the officer to show to Mr. Wilson a mug shot of Williams, with photos of other persons, and that Wilson, who had previously reported the crime and given his description of Williams to police, identified Williams as one of the men who held up the market on September 24. The effectiveness of appellants’ argument that it was error for the trial court to refuse to permit the disclosure of the informant, is somewhat weakened by the revelation during the People’s case that Jenkins knew the identity of the informer. At the time disclosure was denied Jenkins’ counsel said, “It is offered to prove through this witness [informer] the following: that the informant knew virtually nothing about this defendant, that is my defendant, other than his name; that the informant resembles the defendant Jenkins, both physically in his build, in his facial appearance and his coloring. ’ ’ The judge then asked, “Pardon me. Does that imply that you know who the informant was?” and Jenkins’ counsel responded, “Apparently my client knows who the informant
 
 *656
 
 was.’’
 
 [1]
 
 A defendant who knows the identity of the informer ordinarily will not be prejudiced by a refusal to disclose that identity.
 
 (People
 
 v.
 
 McShann,
 
 50 Cal.2d 802, 807 [330 P.2d 33].)
 

 On two counts disclosure was unnecessary to defendants' case—there was no showing in the evidence that the informer was either a participant in the cime, an eyewitness-nonparticipant or a material witness; and Officer Beyrouty in arresting Williams placed no reliance on any information given by the informer, testifying that the arrest was based solely on Wilson’s identification of Williams from a police photo or mug shot and Wilson’s previous report of the crime and description of Williams. When it appears from the evidence that an informer has participated in the criminal activity or is an eyewitness-nonparticipant or a material witness on the issue of defendant’s guilt, his identity is relevant and a defendant is entitled to disclosure
 
 (Roviaro
 
 v.
 
 United States,
 
 353 U.S. 53 [1 L.Ed.2d 639, 77 S.Ct. 623];
 
 People
 
 v.
 
 McShann,
 
 50 Cal.2d 802, 808 [330 P.2d 33] ;
 
 People
 
 v.
 
 Williams,
 
 51 Cal.2d 355, 359 [333 P.2d 19]) ; but “A mere informer has a limited role. ‘When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged.’
 
 (People
 
 v.
 
 Lawrence, supra,
 
 149 Cal.App.2d [435] at 450 [308 P.2d 821].) His identity is ordinarily not necessary to the defendant’s case, and the privilege against disclosure properly applies.”
 
 (People
 
 v.
 
 McShann,
 
 50 Cal.2d 802, 808 [330 P.2d 33].) Here there is no showing that the informer was a participant or an eyewitness-nonparticipant, or a material witness on the issue
 
 *657
 
 of guilt or accompanied the officers to Williams’ apartment or was present when Williams was arrested; the evidence demonstrates that “he simply point[ed] the finger of suspicion toward” Williams causing the police to show his mug shots to Wilson who readily identified him.
 

 Further, neither the arresting officer nor the prosecutor relied upon the communication from the informer for probable cause for Williams’ arrest.
 
 (Priestly
 
 v.
 
 Superior Court,
 
 50 Cal.2d 812, 818 [330 P.2d 39].) The informer was used only as a lead to information independently verified by Wilson, one of the victims. Thus, the identity of the informer ceased to be material in a test of the validity of Williams’ arrest. “The rule requiring disclosure of an informer’s identity has no application in situations where reasonable cause for arrest and search exists aside from the informer’s communication.”
 
 (People
 
 v.
 
 Hunt,
 
 216 Cal.App.2d 753, 756-757 [31 Cal.Rptr. 221];
 
 People
 
 v.
 
 Williams,
 
 51 Cal.2d 355, 359 [333 P.2d 19].)
 

 While characterized by appellants as an unreliable police informer, Wilson acted strictly in the capacity of a private citizen who not only observed, but was a victim of the September 24 robbery. The test of reliability applied to regular police informers is not applicable to Wilson. “A citizen such as Mr. Owens, who reports a crime committed in his presence, is more than a mere informer. He is an observer of criminal activity who, by calling the police, acts openly in aid of law enforcement.”
 
 (People
 
 v.
 
 Lewis,
 
 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579]; see also
 
 People
 
 v.
 
 Vaughn,
 
 155 Cal.App.2d 596, 598-599 [318 P.2d 148].) Wilson was both observer and victim of the crime. It was entirely reasonable for police officers to act upon the report of and description of a participant in a robbery and later identification of him by one who had been brought face to face with him during the commission of the crime.
 
 (People
 
 v.
 
 Livingston,
 
 252 Cal.App.2d 630, 635 [60 Cal.Rptr. 728] ;
 
 People
 
 v.
 
 Wright,
 
 216 Cal.App.2d 866, 871 [31 Cal.Rptr. 432];
 
 Cole
 
 v.
 
 Johnson,
 
 197 Cal.App.2d788, 793 [17 Cal.Rptr. 664].)
 

 Inasmuch as the arrest of Williams was valid, the subsequent immediate search of his apartment was lawful and the gun and holster found therein were properly received in evidence.
 

 There is no substance to appellants’ last contention that their rights under the Fifth, Sixth and Fourteenth Amendments, United States Constitution, were violated when they
 
 *658
 
 were compelled to participate in a police lineup because (1) no attorney was present at the time and their participation resulted in the use of highly prejudicial evidence in the trial, (2) they were required to actively assist the prosecution in procuring evidence against themselves, and (3) they were deprived of equal protection of the law—persons of means would have effected their release on bail and prevented the police from compelling them to participate in a lineup, while they, who were indigent and could not arrange for bail, were subjected to a lineup resulting in their identification by various witnesses.
 

 First, the trial commenced December 27, 1965, and concluded January 21, 1966. The rules in
 
 Gilbert
 
 v.
 
 California,
 
 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 195] and
 
 United States
 
 v.
 
 Wade,
 
 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] (decided June 12, 1967) requiring that those who are to be in a police lineup be advised of their rights to an attorney, and so on, are applied prospectively; thus they are not here applicable.
 
 (Stovall
 
 v.
 
 Denno,
 
 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967];
 
 People
 
 v.
 
 Hunter,
 
 252 Cal.App.2d 472, 478 [60 Cal.Rptr. 563];
 
 People
 
 v.
 
 Feggans,
 
 67 Cal.2d 444 [62 Cal.Rtpr. 419, 432 P.2d 21].) As to the presence of an attorney, none was requested by either defendant; and the record does not show that defendants in any manner were denied advice of counsel prior to or during the police lineup.
 

 Second, their identification by witnesses in the lineup contributed little to the conviction of Williams and Jenkins. As to the first robbery, all witnesses positively identified both defendants at the trial; identification by three was given in the courtroom independent of any prior identification in a lineup—Mrs. Ballentine did not identify Jenkins at the police lineup but in the courtroom at the trial positively identified him as one standing in line at her checkstand; Mr. Parrish and Marilyn Long did not identify Williams in the lineup but positively identified him in the courtroom at the trial. As to the second robbery, all witnesses positively identified both defendants at the trial; identification by two was given in court independent of any prior identification in a lineup—Mr. Wilson identified Williams from a mug shot shown to him by police before any lineup and Mr. Graham who did not identify Williams in a lineup identified him in the courtroom as the man who looked similar to one of the gunmen; Jenkins, identified by all witnesses at the lineup, was positively identified by all of them in the courtroom; further, Jenkins’ testi
 
 *659
 
 mony was not strong in his defense and gave the jury further evidence to consider on the issue of his participation in the crime.
 

 On the issue of self-incrimination, the court stated in
 
 United States
 
 v.
 
 Wade,
 
 388 U.S. 218 [18 L.Ed.2d 1149, 1154, 87 S.Ct. 1926] : “Neither the lineup itself nor anything shown by this record that Wade was required to do in the lineup violated his privilege against self-incrimination. We have only recently reaffirmed that the privilege ‘protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. . . .’
 
 (Schmerber
 
 v.
 
 California,
 
 384 U.S. 757, 761 [16 L.Ed.2d 908, 914, 86 S.Ct. 1826])” In
 
 Schmerber
 
 v.
 
 California,
 
 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], the court said at page 764: “ [B]oth federal and state courts have usually held that [the privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.” Herein there is no indication that defendants were asked to do more than stand in the lineup; they neither made nor were asked to make any statements.
 
 (People
 
 v.
 
 Lopez,
 
 60 Cal.2d 223, 234, 243, 244 [32 Cal.Rptr. 424, 384 P.2d 16];
 
 People
 
 v.
 
 Parham,
 
 60 Cal.2d 378, 380 [33 Cal.Rptr. 497, 384 P.2d 1001].)
 

 Appellants’ contention that they were deprived of equal protection of the law is here without merit for the record supports no finding that in any material way the lineup adversely affected them at the trial. They established no prejudice resulting to them because they were incarcerated and unable to post bail. All witnesses who identified them in the police lineup positively identified them at the trial; four witnesses who had not or could not identify them in the lineup were able to and did independently positively identify them in the courtroom and one identified Williams from a mug shot before any lineup. Had defendants been on bail they still would have been faced with the identification testimony of Wilson, Parrish, Long, Graham and Ballentine.
 

 Each judgment is affirmed.
 

 Wood, P. J., and Fourt, J., concurred.
 

 A petition for a rehearing was denied November 29, 1967, and the petition of appellant Jenkins for a hearing by the Supreme Court was denied December 27, 1967.
 

 [1]
 

 Whe colloquy continued:
 

 “The Court: Then why ask him about it? If he knows you can subpoena Mm and bring him down if you think there is any question of confusion. Why didn’t you subpoena Mm? The subpoena powers are open to you. Is that your purpose?
 

 “Mr. Spivak [.counsel for Jenkins] : No.
 

 ‘ ‘
 
 The Court : Is it your contention that this informant was the one who perpetrated these robberies and there was a question of mistaken identity?
 

 “Mr. Spivak: That I can’t say, your Honor, with any degree of certainty.
 

 “The Court: Then what is the purpose to be accomplished in knowing who the informant is and letting the jury know unless you are going to prove some kind of an alibi or mistaken identity or something?
 

 “Mr. Spivak: No alibi is intended.
 

 “The Court: What will you accomplish if you already know or the client knows to ask this police officer who it is V ’