[Crim. No. 6367. First Dist., Div. One. Mar. 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. DOYLE WALLER, Defendant and Appellant.

134

Dennis J. Kehoe, under appointment by the Court of Appeal, and Adams & Levin for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Michael Phelan and L. Donald Boden, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant has appealed from a judgment sentencing him to state prison following a jury verdict which found him guilty of possession of marijuana in violation of section 11530 of the Health and Safety Code. He asserts as error: (1) that there was a prejudicial use of evidence obtained through an illegal arrest, search and seizure because there was no probable cause for his arrest; (2) that there was a prejudicial use of evidence obtained through an illegal search of the vehicle he was operating because it was searched without a search warrant at a time and place remote from the arrest; (3) that there was a failure to establish a proper foundation for the use of that evidence because of discrepancies in the testimony concerning the chain of possession; (4) that the court improperly permitted the prosecution to cross-examine the defendant regarding the details of his prior conviction; and (5) that there was no substantial evidence to indicate that defendant had knowledge of the presence of the substance found in the vehicle.

An examination of these contentions in the light of the record and the applicable law fails to reveal any prejudicial error, and the judgment must be affirmed.

*The Facts*

On the evening of September 16, 1966, defendant, Doyle Waller, Dennis Stenisrud and Candice Rice began a trip from San Francisco to Big Sur in defendant's employer's white Dodge truck.

Prior to leaving for Big Sur, they drove to Stenisrud's apartment. Stenisrud and Miss Rice went upstairs, while defendant waited in the truck. At the apartment, they were joined by one David Krstich. They brought down camping gear for the trip. Miss Rice had a large leather purse, a

sweater, some marijuana, and about 100 LSD capsules. Miss Rice's possessions were "all loose," not contained in any bundle. In addition to the gear, and her possessions, she thought there was a cardboard box in the car, located in back of the driver's seat, with some stuff in it, but she did not look in the box.

On the trip down to Big Sur, Miss Rice became aware that there was marijuana, in addition to her own, in the truck. The defendant, who did all the driving on the trip, picked up a can that was in front of the truck, and "took a joint out of it." According to Miss Rice, he then lit it, and passed it to her. Miss Rice did not know to whom this marijuana belonged. She had not seen the defendant bringing any marijuana into the car. During the trip down, the four people apparently smoked the marijuana, without concern for its source.

The group spent the night of September 16, 1966 camping in the truck at Big Sur. The next morning, they drove to Monterey, for breakfast, arriving there at about 11 a.m. On the trip to Monterey, the group smoked marijuana.

Shortly after breakfast, the group went to a pipe shop to purchase some pipes. Defendant purchased a black, fish-shaped pipe. They all returned to the van and filled their pipes. Defendant filled his pipe from what Miss Rice thought was the little can in the front of the truck. However, since she was busy filling her own pipe she could not be sure of this. The group smoked the pipes, and defendant was smoking his until some time prior to his apprehension by the police.

At approximately 12:30 p.m., one of the members of the group offered a ride to two young hitchhikers, Layne McGraw and Dennis Johanson. During the course of the ride, from Monterey to Pacific Grove, one of the group offered the hitch-hikers some "pot." Dennis Johanson observed the defendant take a puff from a pipe that Miss Rice passed around.

Some four or five minutes after being dropped off at Pacific Grove, the hitchhikers located a police officer, and described to him what had occurred in the van. Shortly after the conversation with the hitchhikers the officer saw the white van. He stopped it and searched it under circumstances reviewed below. The contraband found was admitted in evidence at the trial over the objection of defendant.

Defendant testified in his own behalf. He indicated that Stenisrud and Miss Rice had "sleeping bags and long white cushions and box and they had some extra clothing and some

blankets." He declared he told them they were not to have marijuana in the vehicle. He testified that, to his knowledge, no marijuana was smoked on the way to Big Sur, and if marijuana was smoked he thought he would have been aware of it. He indicated that the first use of drugs occurred in Monterey when Miss Rice procured and used "snappers" (amyl nitrate). Miss Rice and the others then went to a pipe shop while he walked through a historical building in Monterey. He indicated his first knowledge that there was marijuana in the car occurred after the hitchhikers had entered and were offered marijuana. Defendant testified that after he dropped off the hitchhikers, he commented on the use of the marijuana in the van, and told the others that he wanted to go back to San Francisco.

I. *Probable Cause for Arrest*

The evidence shows that the police officer was contacted by the boys while he was on routine patrol. The Johanson boy lived near the police station. The officer testified that he knew the Johanson boy "fairly well." He had known him for about a year and a half, "generally as a person that had never been in trouble." The officer had never before received information from the boy upon which he had acted.

The boys told the officer of the incident described above. They indicated that they had been offered a ride in a white van; that three men and a woman were in the van; that during the course of the ride they were offered "pot"; that the odor emanating from the pipe that was passed around was "unusual," unlike any tobacco; that the girl in the van had long stringy hair and was wearing an "orangish" sweatshirt, brown cord pants and sunglasses; and that the van proceeded on toward Asilomar after they got out.

When the officer saw a white van he followed it. As he pulled behind it, he was able to see four people, three males in front, and the girl in the rear. The girl's hair and blouse matched the description given by the boys. The officer stopped the vehicle, and as he was walking toward the driver's side he noticed the girl rummaging around the right hand corner, and the man in the front center seat putting something under the seat. The officer requested identification from the occupants, and asked the defendant, who was driving, for the vehicle registration. The defendant presented an expired license, and according to the officer "that was the only identification I was able to get from him or anyone in the vehicle." No registration was produced for the vehicle.

After assistance arrived, the occupants were advised of their rights, removed from the van, and the men were searched. A search of the van disclosed a cigar pipe and some finely granulated green vegetable matter on the motor panel; a kilo of marijuana in an open cardboard box behind the driver's seat; a brown paper sack under the driver's seat containing a corner of a kilo of marijuana, and a tin can with two marijuana cigarettes, some capsules in a plastic bag, and some loose marijuana scattered throughout the vehicle. Subsequently, a corncob pipe containing marijuana was found in Miss Rice's purse.

Since the arrest was made without a warrant, the burden rested upon the prosecution to show proper justification. (*Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *People* v. *Rodriquez* (1966) 242 Cal.App.2d 744, 747 [51 Cal.Rptr. 873].)

Where information is received from an informer of unknown relaibility, that information alone will not serve to establish probable cause for a subsequent arrest. (*People* v. *Goodo* (1956) 147 Cal.App.2d 7, 9-10 [304 P.2d 776]; and see *People* v. *Amos* (1960) 181 Cal.App.2d 506, 508-509 [5 Cal. Rptr. 451].) On the other hand, "In dealing with the problem of informants whose information may or may not be sufficient to create probable cause, it should be noted that a citizen who purports to be the victim of or to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proved or tested. (See *People* v. *Lewis* (1966) 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 574]; *People* v. *Griffin* (1967) 250 Cal.App.2d 545, 550 [58 Cal.Rptr. 707].)" (*People* v. *Gardner* (1967) 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321]. In addition to the cases cited, see *People* v. *Livingston* (1967) 252 Cal.App.2d 630, 635 [60 Cal.Rptr. 728]; *People* v. *Pressley* (1966) 242 Cal.App.2d 555, 558-559 [51 Cal.Rptr. 563]; and *People* v. *Miller* (1967) 248 Cal.App. 2d 731, 734-735 [56 Cal.Rptr. 865]; and *cf. People* v. *Coleman* (1968) 258 Cal.App.2d 560, 564 [65 Cal.Rptr. 732].)

In the instant case the two boys were more than mere informers. The boys furnished eyewitness accounts of the crime, as well as identification of the criminals and the place of the crime. They were citizens, who were, by contacting the police, acting openly in aid of law enforcement. The trial court properly applied the latter rule in upholding the validity of the arrest and attendant search.

138

■ Defendant seeks to avoid the application of this rule on the ground that the court cut short cross-examination directed to establishing Johanson's reliability.[1] (See Evid. Code, § 711; *People* v. *Dotson* (1956) 46 Cal.2d 891, 898-899 [299 P.2d 875]; and *People* v. *Goodo, supra,* 147 Cal.App.2d 7, 9-10.) The question propounded by the interrogator was argumentative. There was nothing to be gained by further exploring the points, already developed, that the officer had not previously relied upon information furnished by the declarant, or that he had no other knowledge of the youths' reliability than that to which he had testified. There was no error in cutting off the cross-examination on the points already covered. The defendant did not offer to develop any new matter which might have thrown further light on the officer's right to accept the informant's statements.

■ Defendant further asserts that the burden was on the prosecution to establish that the informants were in fact citizen informants and not of the status of participants, or "stool pigeon" informers, whose reliability must be established within the rule first stated above. (See *Tompkins* v. *Superior Court, supra,* 59 Cal.2d 65, 67.) There is nothing in the record to indicate that the investigating officer had any cause to doubt the statement of the boys, and pursue further interrogation to determine their non-participation. The record reflects a prima facie case of non-participating informants. Nor did defendant, by further questioning or proper offer of proof, reveal that he wished to pursue this subject further after his cross-examination on reliability had been curtailed.

■ Finally, defendant asserts that the information given the officer failed to reflect his participation, and that therefore

[1]The dialogue between the attorney and the court was as follows: "Q. You couldn't say positively anything about the boy? In other words, it's kind of a negative thing, isn't it, you could say as far as I know he never had been in trouble but you couldn't say I knew him to be a reliable person or anything like that positively, do you follow me? A. I don't follow you. Q. I'll rephrase it. THE COURT: I might say we can shorten this inquiry, . . . because the law of informer doesn't apply here. We are not involved with a matter of informers, we are involved with the issue of a private citizen who has freshly observed an alleged criminal offense who informs a police officer. This isn't an informer case, police informer case. [Defendant's Attorney]: I understand that it's not a police informer case, but an informant and I want the record to show it's at least my position, if you are going to cut it short—— THE COURT: (Interrupting) I am. [Defendant's Attorney]: As I understand the law of California there's no distinguishing between informant and common informer, and it seems to me that reliability is the test in either case, and there has to be some basis shown for reliability before such a cause can be taken on."

the stop, the arrest, and the attendant search were illegal as to him for want of probable cause. (See *People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Cedeno* (1963) 218 Cal.App.2d 213, 219 [32 Cal.Rptr. 246]; and *People* v. *Guy* (1956) 145 Cal.App.2d 481, 487 [302 P.2d 657].) This contention rests upon the fact that neither the informants nor the officer testified as to what was told the officer concerning the identity of the specific occupant, or occupants, who had the "pot," who offered the boys the "pot," or who was ·smoking the substance which produced the funny smelling smoke. This contention also misses the mark. It is obvious that the officer could not stop the vehicle to investigate the activities of any one occupant, without stopping it as to all. The contraband was carried in the van so openly that the hitchhikers were not only invited to participate in its use, but also were able to observe its use. Under these circumstances, there was probable cause to believe that all those present and tacitly assenting to what was told to and what was observed by the boys, were jointly involved in the use and possession of the contraband. (See *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].)

In any event, even if there were a requirement of corroboration because of the unreliability of the informants, such corroboration was present in this case. After the car was stopped, the officer observed what appeared to be attempts to secrete objects within the van. Such circumstances, when combined with what is otherwise considered insufficiently reliable information may warrant an arrest. (*People* v. *Webb* (1967) 66 Cal.2d 107, 112 [56 Cal.Rptr. 902, 424 P.2d 342]; *People* v. *Melchor* (1965) 237 Cal.App.2d 685, 693 [47 Cal.Rptr. 235]; *People* v. *Ausbie* (1965) 232 Cal.App.2d 724, 727 [43 Cal. Rptr. 137]; *People* v. *Landry* (1964) 230 Cal.App.2d 775, 780 [41 Cal.Rptr. 202].) Also, the failure to produce evidence of registration or identity gave further justification to the officer's action. (See *People* v. *Valdez* (1966) 239 Cal.App.2d 459, 462 [48 Cal.Rptr. 840] [overruled on other grounds *People* v. *Doherty* (1967) 67 Cal.2d 9, 15 [59 Cal.Rptr. 857, 429 P.2d 177]].)

The arrest and attendant search was sustained by probable cause.

II. *Subsequent Search of the Vehicle*

The evidence first observed at the scene of the arrest remained in the van. The van was locked, and driven to a

garage. At the garage, the arresting officer, assisted by a fellow officer, tagged and removed the evidence.

Defendant's reliance upon the principles expounded in *Preston* v. *United States* (1964) 376 U.S. 364, 367 [11 L.Ed. 2d 777, 84 S.Ct. 881] and in *People* v. *Burke* (1964) 61 Cal.2d 575, 580 [39 Cal.Rptr. 531, 394 P.2d 67], vanishes with the qualifications imposed on those decisions by *Cooper* v. *California* (1967) 386 U.S. 58, 61 [17 L.Ed.2d 730, 87 S.Ct. 788]; and *People* v. *Webb, supra,* 66 Cal.2d 107, 126 and 126-127. The search at the garage did not reveal objects not discovered at the scene of the arrest. In any event, it was justified either as a continuation of the existing search, or as a search attendant to the lawful possession of a vehicle in which contraband had been found. (See former Health & Saf. Code, § 1161, repealed Stats. 1967, ch. 280, § 1, effective June 7, 1967, and cases last cited.)

### III. *Custody of the Evidence*

Defendant contends that the prosecution failed to establish a foundation for the introduction of the marijuana found in the van. He bases his argument on the testimony which indicated that the evidence taken from the van was placed in the chief of police's office on September 17, 1966, that the evidence was removed and placed in envelopes on September 18, 1966, and that these envelopes were not mailed until September 19, 1966, which is contradicted by other evidence that the envelopes were mailed on September 20, 1966.

As the People point out, it is immaterial whether the envelopes were mailed on September 19th or 20th. The evidence indicates that these samples were in a sealed box in a safe in police custody until mailed, and were not removed until they were mailed. This is all that is necessary to demonstrate.

Moreover, although the defense attorney objected to the introduction of the actual box in which the evidence was mailed, he did not object to the receipt into evidence of the narcotics contained in the box. Defendant's objection, for the first time on appeal, cannot be sustained. (*People* v. *Richardson* (1959) 51 Cal.2d 445, 447 [334 P.2d 573].)

### IV. *Cross-examination of Defendant*

The following occurred on cross-examination of the defendant: "Q. Now, isn't it true, Mr. Waller, that you were convicted of a felony? A. Yes. Q. And what was that felony? A. It was for possession and sales. THE COURT: Of what? THE WITNESS: Marijuana. [Deputy Dist. Atty.]: That was for sale

of marijuana? A. Yes. Q. How many counts? A. I think there were two to the same person. Q. And when was that offense committed? A. Christmas of 1959. Q. And when were you convicted of that offense? A. 1960.''

■ Defendant now contends that the foregoing was an unwarranted exploration of the details of his prior conviction. (See *People* v. *Burns* (1952) 109 Cal.App.2d 524, 534-538 [241 P.2d 308, 242 P.2d 9].) Review of this matter is precluded by defendant's failure to object in the trial court. (*People* v. *Richardson, supra,* 51 Cal.2d 445, 447.) Furthermore, it appears that the matters concerning his prior conviction were first brought out on direct examination.[2] ''If appellant were prejudiced by the full disclosure of all the circumstances of his prior arrest he can blame no one for it but himself and cannot be heard to complain on this appeal.'' (*People* v. *Coleman* (1948) 83 Cal.App.2d 812, 816-817 [189 P.2d 845].)

Finally, it may be noted that there may be certain issues, such as knowledge of the nature of a substance, intent, common scheme or design, etc. where it may be proper to explore the details of other offenses beyond the mere fact of conviction which is permitted for impeachment. (See *People* v. *Horn* (1960) 187 Cal.App.2d 68, 74-76 [9 Cal.Rptr. 578]; and Witkin, Cal. Evidence (2d ed. 1966) § 345, pp. 303-306.)

### V. *Sufficiency of the Evidence*

■ ''It is well settled that in a prosecution for unlawful possession of narcotics the People must prove (1) that the accused exercised dominion and control over the drug, (2) that he had knowledge of its presence and (3) that he had knowledge of its narcotic character. [Citations.] These elements may be established by circumstantial evidence and any

---

[2]The following occurred on direct examination: ''Q. Was there anything in your mind to indicate there was anything of a narcotic nature in your vehicle? A. No. Q. Mr. Waller, you have been convicted of a felony, have you not? A. Yes. Q. A felony involving narcotics, isn't that true, sir? A. Yes. THE COURT: Was the narcotic involved marijuana? THE WITNESS: That's what it was. [Defendant's Attorney]: Q. All right. Now, you went to prison for that, isn't that true? A. Yes. Q. All right. Now, since you have been out of prison you have done—wait a minute—strike the question. Before you went to prison, Mr. Waller, you used narcotics, marijuana, is that true? [Deputy Dist. Atty.] I object, Your Honor, this would be irrelevant. [Defendant's Attorney]: I think it goes to knowledge. THE COURT: Objection sustained—overruled. [Defendant's Attorney]: Q. Is that true, sir? A. Yes. Q. All right. Now, have you used anything of a narcotic nature since you have been out of prison? A. No.''

reasonable inferences drawn therefrom. [Citations.]'' (*People* v. *Estrada* (1965) 234 Cal.App.2d 136, 155 [44 Cal.Rptr. 165, 11 A.L.R.2d 1307].)

Defendant contends that the mere fact that he was in the van is not sufficient to show that he had knowledge of the presence of marijuana in it. (See *People* v. *Antista* (1954) 129 Cal.App.2d 47, 51-53 [276 P.2d 177]; *People* v. *Foster* (1953) 115 Cal.App.2d 866, 868 [253 P.2d 50]; and *People* v. *Bledsoe* (1946) 75 Cal.App.2d 862, 863-864 [171 P.2d 950].)

There is direct evidence from which this knowledge can be found in the testimony of one of the boys, and that of Miss Rice. Moreover, ''the true rule is that when narcotics are found concealed in or about an automobile, at least where such automobile is in the possession of the owner or his entrustee, the trial court may infer knowledge on the part of the owner. Such facts are sufficient to cast the burden of going forward with an explanation on the owner. The sufficiency of such explanation is for the trial court.'' (*People* v. *One 1940 Chrysler* (1946) 77 Cal.App.2d 306, 314 [175 P.2d 585]. See also *Rideout* v. *Superior Court, supra,* 67 Cal.2d 471, 474.)

Sufficient evidence of defendant's knowledge of the nature of the substance is found in the admission in his testimony, and in his prior conviction. (See *People* v. *Horn, supra,* 187 Cal.App.2d 68, 74-76.)

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied April 12, 1968, and appellant's petition for a hearing by the Supreme Court was denied May 15, 1968.