256 Cal.App.2d 869 (1967)
THE PEOPLE, Plaintiff and Respondent,
v.
FELICE PAUL FAILLA, Defendant and Appellant.
Crim. No. 13255. 
California Court of Appeals. Second Dist., Div. One. 
Dec. 13, 1967.
 Felice Paul Failla, in pro. per., and M. SigBert Charig, under appointment by the Court of Appeal, for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Charles P. Just, Deputy Attorneys General, for Plaintiff and Respondent. *871
 LILLIE, J.
 A jury convicted defendant of five counts of burglary ( 459, Pen. Code) and one of kidnaping ( 207, Pen. Code); on appeal the Supreme Court reversed the judgments on the burglary counts and affirmed the judgment on the kidnaping count (VI) (People v. Failla, 64 Cal.2d 560, 571 [51 Cal.Rptr. 103, 414 P.2d 39]). On retrial a jury found defendant guilty of first degree burglary on counts I, II as amended, III and IV; it could not agree as to count V and the same was later dismissed. He was sentenced to the state prison for the term prescribed by law on each count, the sentences to run concurrently with each other but consecutively with the sentence previously imposed on count VI (kidnaping) and affirmed by the Supreme Court (People v. Failla, 64 Cal.2d 560, 571 [51 Cal.Rptr. 103, 414 P.2d 39]). He appeals from the judgment.
 Count IV
 Around 2:15 a.m. on August 14, 1963, Constance Brenner was awakened by a man standing at the foot of her bed shining a flashlight into her face. The covers had been removed and her nightgown was pulled up exposing her; the man, armed with something that "looked like a paper opener or like a stiletto," told her to make no noise, all he wanted was "just to kiss" her and put his hand on her. She rolled off the bed and started to scream; the man fled. Three months later she identified defendant in a police lineup.
 Count II
 On October 9, 1963, around 2:50 a.m., Diane Flook was awakened by her dog. Presently the light from a flashlight was in her face and a man's voice told her to "shut up," he would kill her if she wasn't quiet. He ordered her into the living room where she sat down in a chair; she felt her wallet under her on the seat. He unzipped his pants, exposed himself and said he was going to rape her; she became frightened, got up and screamed. Again he threatened to kill her and she swung at him with a pair of capri pants. Finally after trying to give her money, he struck her with his fist knocking her out; a minute later she recovered and found the door wide open and the man gone. Her wallet had been in her purse before she retired the night before; the next time she saw it, it was outside the purse on the seat of the chair on which she sat in the living room; from it $8.00 was missing. She described her assailant, including the characteristics of his voice and hands; she later identified defendant in a police lineup. *872
 Count III
 Following the attack on Miss Flook, and around 4 a.m. on the same day, Florence Omori was awakened by a flashlight shining in her face; her roommate was asleep in another bed; the man said, "Don't scream or I will kill you; I have a knife." He crossed to the other side of the bed, kneeled down, pulled the covers off Miss Omori and told her he just wanted her "to play with him"; he unzipped his pants, took her hand in his and forced her to help him masturbate. She later identified him at a police lineup. He had a distinguishing voice that assisted her in identification.
 Count I
 On November 1, 1963, around 5 a.m., Patricia Neisson was awakened by a hand on her buttocks; the man said, "I have a knife; if you scream I will kill you." She sat up and the man "hunched" over her. He exposed himself and tried to force her into an act of oral copulation; a tussle ensued. Then he started to masturbate. Subsequently she found her wallet, which had been in her purse in the bathroom, on the living room floor but nothing was missing. She identified defendant at a police lineup; his distinctive walk, posture, gait, speech and hands assisted her in the identification.
 On November 13, 1963, around 5 a.m., a man who "certainly looks like" defendant, wearing only a T-shirt and undershorts, tried to enter Marguerite Faulkner's apartment. The screen had been taken off the window and he was standing on the sill shining a flashlight in her face; as she screamed he fled.
 Defendant offered an alibi defense but did not testify.
 [1] Appellant claims that his arrest was illegal and he was not advised of his constitutional right to counsel at the police lineup. Because no exact formula for determining probable cause exists and each case must be decided on the facts and circumstances presented to the officers at the time they were required to act (People v. Ross, 67 Cal.2d 64, 79-80 [60 Cal.Rptr. 254, 429 P.2d 606]), we point up the testimony of Officer Carroll. In the early morning hours of November 13, 1963, he and Officer Herres were in an unmarked police vehicle at La Mirada and Van Ness because of burglaries in the area; "we figured the suspect might be operating in that area on that particular morning"; he knew the locations of prior burglaries and that they had occurred between 11 p.m. and 6 a.m., and had a description of the suspect; *873 around 5 a.m. (approximate time the man who "looks like" defendant fled from the apartment of Marguerite Faulkner) they saw defendant, who fit the description of the suspect, running between two apartment buildings into the center of the street, pause, look back, run east on La Mirada and disappear; at or near the point where defendant disappeared from their view they saw and heard a car start up, accelerate rapidly and drive away; no one else was on the street; they followed him with their lights off and finally stopped him at 5636 La Mirada; defendant was alone in the car, perspiring and breathing heavily; he handed them a business card bearing the name Mike Rotella, 5636 La Mirada; a flashlight was in full view on the seat. These circumstances are sufficient to support the finding that defendant was the person the officers saw running between the apartment buildings and to warrant the officers stopping him for questioning (People v. Mickelson, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; People v. Martin, 46 Cal.2d 106, 108 [293 P.2d 52]; People v. Blodgett, 46 Cal.2d 114, 117 [293 P.2d 57]; People v. Michael, 45 Cal.2d 751, 754 [290 P.2d 852]); and the combination of all factors was sufficient to constitute probable cause for defendant's arrest (People v. Williams, 67 Cal.2d 226, 229 [60 Cal.Rptr. 472, 430 P.2d 30]; People v. Torres, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; People v. Fischer, 49 Cal.2d 442, 446 [317 P.2d 967]; People v. Ingle, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; People v. Hillery, 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; People v. Stewart, 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97]; People v. Cockrell, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]) and justify the seizure of the flashlight, in plain sight in the vehicle.
 [2] The rule of Gilbert v. California, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] and United States v. Wade. 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], decided June 12, 1967, excluding identification evidence because the accused was not advised of his right to counsel at a police lineup, is unavailable to appellant (Stovall v. Denno, 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; People v. Feggans, 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]); the retrial occurred in October 1966. Appellant has failed to support his argument in his reply brief that "another more favorable date of reference appears probable." However, we cannot say from the record before us that defendant was denied due process by the part the lineup played in his conviction--each victim described *874 defendant to the police; thereafter each identified him at a police lineup prior to arraignment; and each independently identified defendant at both the preliminary hearing and at the trial. [fn. 1]
 [3] For the first time the claim of misjoinder of multiple "sex offenses" is raised. No mention was made of this on the trial level. Under such circumstances he may not properly complain on appeal that there was a misjoinder resulting in prejudice. (People v. Kemp, 55 Cal.2d 458, 474 [11 Cal.Rptr. 361, 359 P.2d 913]; People v. Martin, 250 Cal.App.2d 263, 267 [58 Cal.Rptr. 481].) Here there is no misjoinder. Only a single defendant was involved; he was accused of committing crimes of a similar class--burglary--which, though consisting of separate transactions, were connected by a "common element of substantial importance in their commission." In each burglary, the victim was asleep; in the early morning hours she was awakened; defendant directed a flashlight into her face (except in count I); she was forced into silence by threat of death or by display of s sharp weapon and she was subjected to the same kind of sexual misconduct. It is not necessary that the offenses joined relate to the same transaction or be at the same time or place, or be against the same victims if "... there is a common element of substantial importance in their commission." (People v. Chessman, 52 Cal.2d 467, 492 [341 P.2d 679]; People v. Kemp, 55 Cal.2d 458, 475 [11 Cal. Rptr. 361, 359 P.2d 913]; People v. Martin, 250 Cal.App.2d 263, 267 [58 Cal.Rptr. 481].)
 [4] Arguing that the Supreme Court erred in not reversing count VI (kidnaping) because it left moot the area of double punishment and on retrial made it impossible for a full determination of whether his course of conduct with Miss Flook (counts II, VI) constituted an "indivisible transaction," appellant claims that he should have been retried on count VI (kidnaping). The Supreme Court specifically affirmed the judgment on count VI (People v. Failla, 64 Cal.2d 560, 571 [51 Cal.Rptr. 103, 414 P.2d 39]); such disposition, pursuant to the doctrine of the law of the case, foreclosed a retrial of the kidnaping charged in that count. (People v. Terry, 61 Cal.2d 137, 151 [37 Cal.Rptr. 605, 390 *875 P.2d 381].) It should be noted that prior to retrial, count II was amended to eliminate any problem of double punishment; and the evidence of defendant's course of conduct with Miss Flook is sufficiently extensive as to permit the trial court to properly determine the nature of his "transactions" and impose sentence accordingly. Further, he has not been deprived "of appellate review of all convictions" as urged in appellant's reply brief. He has had Supreme Court review of his conviction of kidnaping Miss Flook (count VI), and is neither entitled to retrial on that count nor a second appellate review thereon; and all other convictions are the subject of the present appeal.
 Nevertheless, on the theory that the two crimes, burglary (count II) and kidnaping (count VI), "were part of a single episode [and] only one sentence could lawfully be imposed" (People v. Sheppard, 250 Cal.App.2d 736, 740 [58 Cal.Rptr. 814]), appellant claims that he has been subjected to double punishment. Count II involves the same victim, the same date, and the same general circumstances as does the kidnaping previously charged in count VI and affirmed. (People v. Failla, 64 Cal.2d 560 [51 Cal.Rptr. 103, 414 P.2d 39].) The "dilemma" anticipated by the Supreme Court [fn. 2] was met by the prosecutor in amending count II to charge defendant *876 with entry of Miss Flook's apartment "with the intent ... to commit theft." [fn. 3] The evidence clearly establishes in support of the conviction on count II (entry with intent to commit theft) that before defendant awakened his victim and kidnaped her by forcing her into the adjoining room "so that he could pursue his sexual purposes ... without fear of interruption" (p. 570), he had already committed the theft by removing her wallet from her purse taking eight dollars from it and dropping the wallet into the seat of the chair on which she later sat. This occurred immediately after entry and was a separate and distinct act divisible from her later forcible removal to the living room for the purpose of sexual misconduct; and punishment for both acts is not prohibited. (See People v. Failla, 64 Cal.2d 560, 571 [51 Cal.Rptr. 103, 414 P.2d 39].)
 [5] The prosecutor and law enforcement agencies are accused by appellant of the suppression of certain evidence. He says that the prosecutor failed to mention that none of his foot or fingerprints were found at the scene of the burglaries although experts checked for fingerprints, to call all witnesses--other girls sleeping in the apartments--and to elicit further testimony, given at the first trial, that when he got out of the car he was standing on a grassy plot (at the jail the officer saw grass adhering to his shoes); and that since the intruder in Miss Faulkner's apartment was in the window barefoot, the only pertinent evidence of grass would be on his feet, not his shoes, and when he was arrested (5 a.m.) the police failed to check with Rotella to find out if he had an appointment with him as he claimed (Rotella testified he did not expect defendant at 5 a.m.). The prosecution is not required to call any particular witness or put on all of the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord the defendant a fair trial. (People v. Kiihoa, 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673]; People v. Tuthill, 31 Cal.2d 92, 98 [187 P.2d 16].)
 We have examined the alleged "other instances of error ... not in themselves reversible," which appellant claims in *877 their cumulative effect in addition to the foregoing matters would make it reasonably probable that had they not occurred a different result would have obtained; finding no error we deem further discussion of the matter to be unnecessary.
 [6] Appellant claims that the trial court erred in allowing the prosecutor to "instruct" the jury on the meaning of "intent to commit a felony," and in failing to instruct on the meaning of "felonious entry" and that masturbation is not a crime. An examination of the prosecutor's argument considered as a whole reflects no justifiable implication that the masturbation is a felony; he did no more than point up the evidence the jury could properly consider in determining whether defendant entered the premises with "intent ... to commit a felony" and with "intent ... to commit theft." Nor does his argument warrant any claim that the trial court allowed the prosecutor to assume its function to "instruct" the jury. The judge properly instructed on all elements of burglary--the unlawful entry must have been accompanied by a specific intent "to commit theft" (count II), and "to commit theft or to commit any felony." (counts I, III, IV.) Had defendant in good faith believed the prosecutor's argument to be improper, he should have objected at the trial level. In accord with the requirements set up in People v. Failla, 64 Cal.2d 560 [51 Cal.Rptr. 103, 414 P.2d 39], [fn. 4] the trial judge properly defined for the jury theft, indecent exposure as constituting a misdemeanor, and oral copulation as constituting a felony. We do not interpret the Supreme Court's direction as requiring the trial court to do more than instruct the jury which acts it could infer defendant intended to commit amounted to felonies; it not only complied with this but defined what act constituted a misdemeanor. Defendant's pattern of conduct permits the strong inference (counts I, III, IV) that when he entered each apartment he did so with the intent of forcing his victim into an act of oral copulation, even though when resisted or the circumstances did not readily permit, he resorted to masturbation. The trial court *878 gave proper instructions on the general principles of law governing the case. It was under no duty, either in accord with People v. Failla, 64 Cal.2d 560, 564 [51 Cal.Rptr. 103, 414 P.2d 39], or the evidence, to instruct the jury that masturbation was not a crime "unless requested." (People v. Wade, 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].)
 The judgment is affirmed.
 Wood, P. J., and Fourt, J., concurred.
NOTES
[fn. 1] 1. Attached to appellant's opening brief is his letter to present counsel, together with affidavit in support of application for leave to produce additional evidence pursuant to rule 23, California Rules of Court. He alleged therein certain occurrences in jail in connection with the police lineup, and that they were not presented to the trial court by his attorney. Appellant's request was denied by this court.
[fn. 2] 2. "In considering a retrial of Count II, however, the prosecutor will face a dilemma. The evidence on Counts II and VI established that the victim was sleeping in the same bedroom as her roommate, in adjacent twin beds, when she was awakened by her dog barking at the foot of her bed.presently defendant entered, threatened her, and said, 'Keep that dog quiet and get up and come into the other room. I want to talk to you.' She rose and walked into the next room where, as related above, defendant exposed himself and fled after striking her when she began to scream. We recently restated the rule that Penal Code section 654 applies 'where there is a course of conduct that violates more than one statute and comprises an indivisible transaction. The divisibility of a course of conduct depends upon the intent and objective of the defendant, and if all the offenses are incident to one objective the defendant may be punished for any one of them but not for more than one.' (People v. Ridley (1965) 63 Cal.2d 671, 677-678 [47 Cal.Rptr. 796, 408 P.2d 124], citing Neal v. State of California (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839], and People v. McFarland (1962) 58 Cal.2d 748, 760 et seq. [26 Cal.Rptr. 473, 376 P.2d 499].) Here, as in those cases, defendant's course of conduct after he first accosted his victim comprised an 'indivisible transaction'; i.e., the technical kidnaping of his victim was intended merely to take her out of the presence of her roommate so that he could pursue his sexual purposes in the adjoining room without fear of interruption. Accordingly, both the kidnaping and the sexual misconduct were 'incident to one objective,' and double punishment therefor would be prohibited. (See People v. Chessman (1951) 38 Cal.2d 166, 193 [238 P.2d 1001]; People v. Bynes (1963) 223 Cal.App.2d 268, 272-273 [35 Cal.Rptr. 633].)" (People v. Failla, 64 Cal.2d 560, 570 [51 Cal.Rptr. 103, 414 P.2d 39].)
[fn. 3] 3. "On this same Count II, however, there is also evidence of a theft by defendant of $8.00 from his victim's wallet. There is no suggestion that the theft and the kidnaping were 'incident to one objective'; on the contrary, it appears that the former took place sometime before the events giving rise to the latter. In these circumstances double punishment for theft and kidnaping would not be prohibited by section 654." (People v. Failla, 64 Cal.2d 560, 571 [51 Cal.Rptr. 103, 414 P.2d 39].)
[fn. 4] 4. "But where the evidence permits an inference that the defendant at the time of entry intended to commit one or more felonies and also an inference that his intent was merely to commit one or more misdemeanors or acts not punishable as crimes, the court must define 'felony' and must instruct the jury which acts, among those which the jury could infer the defendant intended to commit, amounted to felonies. Failure to do so is error, for it allows the triers of fact to indulge in unguided speculation as to what kinds of criminal conduct are serious enough to warrant punishment as felonies and incorporation into the burglary statute." (P. 564.)