[Crim. No. 13418.   Second Dist., Div. Four.   Aug. 19, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. SAMUEL
JAMES WADE, Defendant and Appellant.

H. Randolph Moore, Jr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marvin S. Maltzman, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—The court found appellant Samuel Wade (hereafter defendant) guilty of second degree burglary, found that he had suffered a prior felony conviction and sentenced him to prison. Wesley Wade, also charged with the same offense, was found not guilty. In this appeal from the judgment, defendant maintains that his conviction is not supported by the evidence and that it is the product of an illegal arrest.

Viewing the evidence in the light most favorable to the People (as it must be viewed), the following facts appear: On the night of May 17-18, 1966, the warehouse door of the Record Merchandising Company was pried open and approximately 14 cartons of records were taken. Albert Knutson resides in an apartment located directly over the warehouse. At about 1 a.m. on May 18, he heard the sound of the warehouse door squeaking. He looked out of his window and saw a male Negro of medium build come out of the warehouse carrying two cartons. The man walked across the street to a light-colored automobile which was in the process of parking. Knutson was unable to see who was driving the car. He went to the phone and called the police. When he returned to the window the car and the man he had observed were gone.

On the afternoon of May 19 defendant entered the record store of George Hocutt and asked Hocutt if he was interested in buying some records. Defendant explained that he had gotten them from a friend and showed Hocutt five or six samples. Hocutt recognized the labels on the records. They were distributed exclusively by the Record Merchandising Company. Hocutt explained to defendant that only one of the titles was

of value to him. Defendant told Hocutt he had 125 of that label; that he would sell him the 125 for one dollar a record. (The wholesale price is two dollars a record.) Defendant said that he would give Hocutt the rest of the records as part of the deal; he had 14 or 15 cartons in all (about 375 records). Hocutt told defendant that if he came back the next morning he would have a check for $125 waiting for him. Defendant agreed to this arrangement and walked out. At the time, a white Chrysler was parked in front of the store, and Hocutt observed that defendant walked over and had a short conversation with a male Negro sitting in the car. Hocutt wrote down the license number of the car, QKF 772. Defendant then came back inside the store and told Hocutt to make the check out to Robert Rochelle Wade. He then drove off in the white Chrysler.

After defendant left, Hocutt called the Record Merchandising Company and told the manager, Donald Davis, about his transaction with defendant. At the time of the call Davis was being interviewed by police officers investigating the burglary of the warehouse, and he relayed the information he had received to them. The next day defendant and Wesley Wade were arrested when they drove up and parked near Hocutt's record store. They were in a white Chrysler which Wesley was driving. The 14 cartons of records stolen from the Record Merchandising Company were in the trunk of the vehicle. There were five loose record albums. On defendant's person was a driver's license with the name Robert Rochelle Wade.

Defendant's testimony (on the issue of his guilt or innocence) was limited to a statement that he owned a 1956 Mercury automobile.

■ Regarding the claimed insufficiency of the evidence to support a finding of guilt, the following rule is pertinent: "'Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. [Citations.]'" (*People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal. Rptr. 473, 376 P.2d 449].)

Capsulized, the evidence establishes that a warehouse was burglarized and 14 cartons of records were stolen; at least two persons were involved; one was a male Negro (defendant fits that description); another drove a light colored car; the day following the burglary defendant displayed some of the stolen records, indicated that he had 14 cartons of records to sell,

and gave a false name; he was being driven at the time by another man in a light colored car; the next day defendant and his companion were arrested in the same car when they arrived back at the place where defendant had agreed to make the sale; the 14 cartons of stolen records were in the trunk of the car; on defendant's person was a driver's license with the false name he had given the record shop owner.

In the face of this evidence defendant offered no explanation as to how he came into possession of the records. This circumstance, added to the evidence that he fitted the broad description given of one of the burglars and was driving in a car of the same general color, provided the necessary corroboration of the showing of possession.

■ With respect to the probable cause issue, Officer William T. Davies testified that he was an investigating officer on the case. On the morning of May 19, 1966, he interviewed Mr. Knutson. The latter told him about having observed a male Negro carrying record cartons in the middle of the night from the Record Merchandising warehouse to a light colored automobile being driven by another male Negro. That same morning the officer talked to Mr. Davis at the Record Merchandising Company. Davis stated that his warehouse had been broken into and he was missing 14 cartons of records valued at about $600. Davis received a telephone call while the officer was talking to him. He informed the officer that the call was from Mr. Hocutt; that Hocutt stated he had just been approached at his record store by a man offering to sell him records distributed only by Record Merchandising.

The officer was also told about the arrangement Hocutt had made with the man to buy 14 cartons of records for $125; that the man was to return the next day at about noon for his check; that the man was a Negro, about 30 years of age, about 5-10 in height and 175 pounds in weight; that he gave the name Robert Rochelle Wade; that he was being driven by another male Negro in a white Chrysler with the license number QKF 772.

Officer Davies further testified that he ran a check on the automobile described and found that it was registered to a Wesley Wade. From police records, he learned that Wesley Wade had a criminal record for robbery. He secured a photograph of Wesley. There was no record of a Robert Rochelle Wade.

The next morning (May 20) Davies and a partner officer staked out across the street from Hocutt's record store. At

about 12:30 p.m. the white Chrysler with license number QKF 772 drove up and parked in a parking lot next to the store. From the photograph in his possession Officer Davies recognized Wesley as the driver of the car. The passenger in the car, defendant, fitted the general description of the man Knutson said he had observed. As defendant and Wesley got out of their car, the officers approached them and placed them both under arrest. Immediately after the arrest, the trunk of the car was opened and the stolen records were found inside.

A warrantless arrest by a police officer is authorized whenever there is reasonable cause for the officer to believe that the person to be arrested has committed a felony. (Pen. Code, § 836, subd. 3.) "[A] state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty." (*People* v. *Hillery*, 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208].)

When defendant and Wesley drove up to the record store, considering what the officers' investigation had revealed, it must be concluded that they were justified in entertaining a strong suspicion that the two men had participated in the burglary of the warehouse and were then in possession of the stolen records. Having reasonable cause to arrest defendant and Wesley, the search of the car was justified as incidental to the arrests.

Defendant's contention that the witnesses Knutson and Davis were untested informers upon whom the officers were not justified in relying is without merit. Officers may reasonably rely on "citizen" witnesses who report criminal activity in aid of law enforcement. (*People* v. *Lewis*, 240 Cal. App.2d 546, 550 [49 Cal.Rptr. 579]; *People* v. *Gardner*, 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321].)

The judgment is affirmed.

Files, P. J., and Collins, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.