[Crim. No. 26092. Second Dist., Div. One. June 5, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
RODNEY EDWARD POOLE, Defendant and Respondent.

## Counsel

Joseph P. Busch, District Attorney, Harry B. Sondheim and Jay J. Becker, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo, Fred Manaster and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Respondent.

## Opinion

LILLIE, J.—Defendant was charged with possession of marijuana (§ 11357, Health & Saf. Code) and possession of cocaine (§ 11350, Health & Saf. Code). The People appeal from order of dismissal entered after defendant's motion to suppress (§ 1538.5, Pen. Code) was granted.

Officer Bass had been an officer for seven years and assigned to the narcotics division for one year. Around 11 p.m., while a passenger in the right front seat of an unmarked police car which had stopped on West Boulevard, he saw defendant standing near some apartments, then watched him proceed across the street and walk in front of the police vehicle; he was five feet away from defendant; the lighting was fair and the lights of the police car were shining on defendant; defendant carried a strainer and the officer observed behind his right ear a hand-rolled cigarette twisted at both ends which in his opinion was a marijuana cigarette; he had seen "many similar to it on many, many occasions"

—in "excess of two thousand times"; defendant wore a hat but it did not obstruct his view of the cigarette.

Officer Bass particularly noticed the cigarette because the ends were twisted and were irregularly shaped, and it has been his experience "viewing hand-rolled cigarettes and inspecting them," that such cigarettes contain marijuana; he has seen hand-rolled cigarettes which did not contain marijuana but there are several differences between marijuana and hand-rolled tobacco cigarettes—normal hand-rolled cigarettes are irregular but the ends are not twisted or if they are, only one end is twisted, and marijuana cigarettes are "rather large in the center portion," both ends are twisted and they are wrapped "in a heavier gauge of paper than normal cigarettes, a wheat paper or a brown paper sack"—he has seen hand-rolled cigarettes not containing marijuana with both ends twisted but these contained PCP or angel dust; PCP increases the potency of an oregano or marijuana cigarette 10 to 20 times. The officer observed that the cigarette behind defendant's ear was bulged in the middle—larger than the two ends—irregular in shape and twisted at both ends.

As Officer Bass got out of the vehicle defendant opened the trunk lid of a parked car, placed the strainer therein and closed it, and as he approached defendant he saw him remove the cigarette from behind his ear; he identified himself and told defendant he would like to talk about the cigarette he had behind his ear, and asked "Where is it?"; defendant opened his right hand and he (the officer) removed therefrom the cigarette and inspected it;[1] he observed that the cigarette contained a green and brown leafy substance resembling marijuana; he asked for identification but defendant said "he didn't have any"; defendant was then arrested for possession of marijuana and his person searched "pursuant to the arrest"; he found a glassine bag containing powder resembling cocaine in defendant's sock; defendant's pants had no pockets; defendant was then arrested for possession of cocaine.

In granting the motion the judge expressly stated he gave full credibility to the testimony of Officer Bass but concluded that he did not

---

[1]Although the arrest was subsequent to the search they were "substantially contemporaneous." (*People* v. *Doherty*, 67 Cal.2d 9, 22 [59 Cal.Rptr. 857, 429 P.2d 177].) On the 1538.5 hearing defense counsel conceded "that once the officer had the right to remove this cigarette and look inside and see that it was marijuana, that everything that followed from that would be legal because if the officer had a right to arrest [defendant] for possession of marijuana, then he had a right to search [defendant], and that would cause the production of cocaine."

"think it is really possible for an officer, no matter what his experience is, to be able to tell from looking at a cigarette by its shape and how it is made that any particular material is inside."[2]

The issue before the trial judge was not whether defendant could be convicted of possession of marijuana on the testimony of Officer Bass or whether he (the judge) thought it was "really possible for *an* officer no matter what his experience is, *to be able* to tell" (italics ours) by its appearance "that *any* particular material *is inside*" (italics ours) of a cigarette, but whether *this* officer (Bass) had *reasonable cause* to believe defendant was in possession of a cigarette containing marijuana, a felony.[3] (*People* v. *Cruz,* 61 Cal.2d 861, 865 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *Superior Court (Harris)* 273 Cal.App.2d 459, 464-465 [78 Cal.Rptr. 153]; *People* v. *Anderson,* 266 Cal.App.2d 125, 132-133 [71 Cal.Rptr. 827]; *People* v. *Walker,* 203 Cal.App.2d 552, 557 [21 Cal.Rptr. 692].) The trial court made a finding that Officer Bass' testimony was credible and gave its reason for granting the motion. Thus in effect it found, as established by Officer Bass in his testimony, that he observed a cigarette of the usual exterior indicia of a marijuana cigarette behind the suspect's ear;[4] his prior visual experience with marijuana cigarettes that

---

[2]The judge reasoned: "I'm taking the officer's viewpoint and his testimony, accepting that. However, I just doubt that it is possible to have an expertise to enable a person to be able to look at a cigarette and tell by its shape what is inside.

"I realize when the officer testified here that in all of his experience hand-rolled cigarettes closed at both ends are either marijuana or some other drug, but this does not mean that this is in all cases this way. I have seen some pretty poorly made tobacco cigarettes, hand-rolled.

"So I don't think it is really possible for an officer no matter what his experience is, to be able to tell from looking at a cigarette by its shape and how it is made that any particular material is inside."

[3]Among other things, it appears that the trial court's ruling on the motion was based on an erroneous legal theory absent which it is unlikely that it would have reached the conclusion it did. (*People* v. *Manning,* 33 Cal.App.3d 586, 603 [109 Cal.Rptr. 531].)

[4]Although defendant and Sterling, a friend, testified in support of the 1538.5 motion, this testimony was to the effect that because of the manner in which defendant wore his hair and his hat and the angle at which the officer observed him it was impossible for Officer Bass to see both ends of the cigarette; and that the officer first started to look in the trunk and it was then defendant removed the cigarette from his ear. The trial judge rejected the defense version in expressly giving credence to the testimony of Officer Bass. No one denied that the cigarette was a marijuana cigarette, in fact defendant testified that it was and that he had it behind his ear but forgot about it. Defense counsel argued it was impossible for Officer Bass to see the cigarette to identify it and that even had he seen it, under *Thomas* v. *Superior Court,* 22 Cal.App.3d 972 [99 Cal.Rptr. 647] there must be something more than finding a hand-rolled cigarette to furnish probable cause. No challenge to Officer Bass' expertise and opinion was made in argument to the trial judge who surprised both parties by stating "I look at it in a little different light than both attorneys do," then giving his reasons for his ruling based entirely on his own opinion

caused him to form an on-the-spot opinion that the cigarette contained marijuana; his training and experience and expertise in the field of narcotics and his comparison between the appearance of a marijuana cigarette and a hand-rolled tobacco cigarette, all without objection (*People* v. *Nickles,* 9 Cal.App.3d 986, 993 [88 Cal.Rptr. 763]) and absent any evidence to the contrary; and other circumstances that fortified the inference drawn by him that the suspect had contraband in his possession. (See *Thomas* v. *Superior Court,* 22 Cal.App.3d 972, 977 [99 Cal.Rptr. 647].) Thus we reverse the order of suppression on two grounds—the trial court's reason is not supported by its implied findings and the evidence (*People* v. *Superior Court (Keithley)* 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]) and, measuring the facts established by the testimony of Officer Bass and found by the court to be true against the constitutional standard of reasonableness, probable cause was established as a matter of law. (*People* v. *Lawler,* 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

First, having found the officer's testimony to be true, the trial judge's stated reason that he does not "think it is really possible for an officer no matter what his experience is, to be able to tell from looking at a cigarette by its shape and how it is made that any particular material is inside" is not supported by the record, and appears to be based entirely on the judge's own unsupported "expertise" which he substituted for that of an experienced narcotics officer. It is noted that the state of the evidence is such that it would not have warranted the use of that judicial process of weighing the degree of Bass' knowledge and experience against Bass' "expertise" in order to have arrived at such a conclusion, and there is no evidence that the trial judge attempted to exercise that power. Had he wanted to find that *this* officer (Bass) on *this* occasion did not have reasonable grounds for believing the cigarette contained marijuana because of his lack of expertise, he could have supported such a finding by simply rejecting the officer's testimony as not worthy of belief. Instead the judge made a blanket statement that no officer whatever his experience, is able to tell a marijuana cigarette by its appearance which runs counter to (1) his finding that Officer Bass' testimony was true, (2) the recognized practice in such cases of proving probable cause by the expert testimony of the arresting officer (*Thomas* v. *Superior Court,* 22 Cal.App.3d 972, 977 [99 Cal.Rptr. 647]; *People* v. *Nickles,* 9 Cal.App.3d 986, 994 [88 Cal.Rptr. 763]; *Fraher* v. *Superior*

---

unsupported in the record that no officer regardless of his expertise is able to tell from the appearance of a cigarette what it contains.

*Court,* 272 Cal.App.2d 155, 161-162 [77 Cal.Rptr. 366];[5] *People* v. *Walker,* 203 Cal.App.2d 552, 558 [21 Cal.Rptr. 692] (the testimony of a forensic chemist is not required on the issue of probable cause) *People* v. *Barajas,* 26 Cal.App.3d 932, 939 [103 Cal.Rptr. 405][6]), and (3) common knowledge that marijuana is used in cigarette form hand-rolled in brown paper (*People* v. *Walker,* 203 Cal.App.2d 552, 558 [21 Cal.Rptr. 692]); and fails to take into account other evidence reinforcing the opinion of Officer Bass.

Second, in light of the record and the trial court's finding we assume that it ruled there was no probable cause as a matter of law (*People* v. *Superior Court (Johnson)* 15 Cal.App.3d 146, 151 [92 Cal.Rptr. 916]; *People* v. *Superior Court (Thomas)* 9 Cal.App.3d 203, 210-211 [88 Cal.Rptr. 21]), a determination clearly unsupported by decisional law. ■ "The constitutional precept of 'reasonableness' as to [arrests] searches and seizures is not a 'fact' which can be 'found' or not found in any given case. Rather, it is standard, a rule of law, external, objective and ubiquitous, to be applied to the facts of all cases. [Citations.]'" (*People* v. *Manning,* 33 Cal.App.3d 586, 599 [109 Cal.Rptr. 531].) Reasonable cause to make an arrest without a warrant must be tested by the facts known to the officer at the time he is required to act (*Guidi* v. *Superior Court,* 10 Cal.3d 1, 9 [109 Cal.Rptr. 684, 513 P.2d 908]; *People* v. *Block,* 6 Cal.3d 239, 244 [103 Cal.Rptr. 281, 499 P.2d 961]; *People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]); and he must be able to point to "specific and articulable facts" and circumstances (*Cunha* v. *Superior Court,* 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704]) which would lead a man of ordinary care and prudence to believe, or entertain a strong suspicion, that the person arrested is guilty of a felony. (*People* v. *Martin,* 9 Cal.3d 687, 692 [108 Cal.Rptr. 809, 511 P.2d 1161]; *People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208].) ■ Thus, did Officer Bass have reasonable cause to arrest defendant at the time he removed the marijuana cigarette from defendant's hand—an issue to be decided not alone on his experience

---

[5]The court pointed out in *Fraher* v. *Superior Court,* 272 Cal.App.2d 151 at pages 161-162 [77 Cal.Rptr. 366], citing *People* v. *Harris,* 62 Cal.2d 681, 683 [43 Cal.Rptr. 833, 401 P.2d 225], that reasonable cause for an arrest may be based on the opinion of the arresting officer that a crime is being committed in his presence based upon his prior experience and specialized training in the investigation of narcotic cases. (*People* v. *Nickles,* 9 Cal.App.3d 986, 994, fn. 3 [88 Cal.Rptr. 763].)

[6]". . . To establish the common sense and rational belief the substance seen at the residence was an illegal narcotic does not require the testimony of a forensic chemist." (*People* v. *Barajas,* 26 Cal.App.3d 932, 939 [103 Cal.Rptr. 405] [search warrant affidavit in which an informant who knew appearance of heroin and could recognize it identified contraband on the premises].)

and training and expertise in the field of narcotics, his testimonial comparisons between a marijuana and a regular cigarette and his opinion that the cigarette he observed behind defendant's ear contained marijuana, but on all of the facts and circumstances known to him at the time he acted. Officer Bass' testimony, given a badge of credibility by the trial judge, also established that upon his initial approach to defendant he observed him attempt to conceal the cigarette by removing it from his ear and "palming" it, a furtive act indicative of his awareness of the illicit nature of the cigarette, a circumstance which pointed to and corroborated the reliability of the officer's opinion that the cigarette contained contraband. (*Thomas* v. *Superior Court,* 22 Cal.App.3d 972, 980 [99 Cal.Rptr. 647]; *People* v. *Superior Court (Harris)* 273 Cal.App.2d 459, 465 [78 Cal.Rptr. 153]; *People* v. *Anderson,* 266 Cal.App.2d 125, 132 [71 Cal.Rptr. 827]; see also *People* v. *Doherty,* 67 Cal.2d 9, 21-22 [59 Cal.Rptr. 857, 429 P.2d 177].)

In the trial court as well as here, defendant cited *Thomas* v. *Superior Court,* 22 Cal.App.3d 972 [99 Cal.Rptr. 647] to the effect that something more than a view of a hand-rolled cigarette is required to furnish probable cause. But *Thomas* is factually unlike the instant case—therein the officer gave no evidence of prior visual experience which caused him to form the on-the-spot opinion that the cigarette was a marijuana cigarette and no testimonial comparison between the appearance of a hand-rolled tobacco cigarette and hand-rolled marijuana cigarette. *In the absence* of this kind of evidence and the fact "[i]t is a matter of common knowledge that hand-rolled tobacco cigarettes have found a new popularity" and "Hand-rolled cigarettes 'in white paper' are not unusual," the court was unwilling on the state of *that* evidence to sanction arrest of a possessor of such cigarettes. (P. 977.) The court in *Thomas* also pointed out that there were no other facts or circumstances in addition to the officer's observation of the hand-rolled cigarette, and distinguished it from those cases in which "there was evidence of *other circumstances* [court's italics] such as *attempted concealment* of the item, the defendant's distinctive manner of smoking it, the odor of burned marijuana, the defendant's evasiveness or abnormal physical condition, an admission by the defendant, *or the arresting officer's expertise on the subject.*" (P. 980, italics ours.)

Thus applying the proper constitutional standard and measuring the "total atmosphere" of the case (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]) against that standard, we conclude that probable cause was established as a matter of law; and reverse the

suppression order and, accordingly, the order dismissing the information.

Wood, P. J., and Hanson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 30, 1975.